IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

PERTEACHER DRONE,
           Plaintiff,

v.

                                              Civil Case No. 3:17-cv-332

JAMES DUFF, et al.,
           Defendants.

## OPINION

The plaintiff, Perteacher Drone, worked as a United States probation officer for the Eastern District of Virginia ("EDVA") until September 30, 2013. Drone alleges that the district terminated her without cause and without a hearing in violation of her Fifth and Fourteenth Amendment rights, 18 U.S.C. § 3602, and the EDVA Employment Dispute Resolution ("EDR") Plan. The defendants have moved to dismiss. Because the Court lacks subject matter jurisdiction over Drone's claims and she fails to state a claim upon which relief can be granted, the Court grants the defendants' motion to dismiss.

## I. BACKGROUND

Drone formerly worked as a probation officer in the EDVA, where she supervised a releasee named C.T. In December 2012, the United States Probation Office for the EDVA began to investigate the way Drone handled C.T.'s case, to determine whether she followed proper protocol and utilized sound professional judgment. Drone read the initial draft investigation report in this matter and provided a written response. After reviewing the report and Drone's response, the chief probation officer at the time, Mary Anne Vogel, issued a notice of adverse action, finding Drone grossly negligent and insubordinate in C.T.'s supervision. Drone timely

appealed the notice of adverse action to EDVA Chief Judge Smith, and, through counsel, submitted a response to Vogel's notice. Chief Judge Smith reviewed these submissions, found a hearing unnecessary to resolve the matter, and issued a decision upholding Vogel's disciplinary action.

On August 7, 2013, Acting Chief Probation Officer Mary R. Farashahi informed Drone that the EDVA planned to abolish her position. After her termination, Drone submitted an EDR complaint, citing discrimination based on age and disability, as well as retaliation and harassment. Deborah Cramer, the appointed EDR Coordinator on this matter, Farashahi, and Drone met pursuant to the second step of the EDR Plan.[1] In the meeting, Farashahi explained to Drone that the EDVA used adverse actions followed by seniority as criteria to eliminate positions; thus, the EDVA abolished Drone's position because of her poor performance and adverse action, not her age or disability.

Drone also raised retaliation and harassment in the meeting, claiming that Supervisory Probation Officer Daniel Guertler harassed her.[2] Following the meeting, Farashahi issued a written decision, finding that the 2013 adverse action did not result from Guertler retaliating against or harassing Drone.[3] Drone appealed the decision to Chief Judge Smith, who set a

---

[1] The complaint does not speak to the first step, but the defendants state that Cramer and Drone reviewed the EDR procedures and agreed that, because Drone's claim involved her supervisor, they would skip the first step of the EDR process, which entails filing a complaint with the employee's supervisor.

[2] According to the defendants, Drone alleged that Guertler initiated the investigation into C.T.'s supervision to harass her. Drone believed the EDVA improperly considered the resulting adverse action when deciding to abolish her position, as the action stemmed from Guertler's retaliation against her.

[3] Drone claims she should have had a hearing before this decision. The defendants explain that because the meeting did not resolve Drone's retaliation and harassment claims, Cramer informed Drone that the next step under the EDR procedures would involve a hearing before the Court Unit Executive. Because Farashahi served as the designated unit executive and had participated

2

hearing on the matter. Drone appeared and counsel represented her at the June 9, 2014 hearing, and Chief Judge Smith gave Drone the opportunity to present evidence and witnesses. (Mot. to Dismiss Ex. 10, at 2, filed under seal.[4]) After the hearing, Chief Judge Smith issued a confidential written decision upholding Farashahi's decision.

Drone appealed to the Fourth Circuit Judicial Council, which affirmed Chief Judge Smith's decision. Drone then brought this suit against judicial branch employees involved in her employment proceedings in their official capacities, as well as Guertler and Deputy Chief Probation Officer Benns in their individual capacities. Drone seeks reinstatement and expungement of the adverse action, as well as back pay and associated benefits.

## II. DISCUSSION[5]

Drone claims violations of due process, 18 U.S.C. § 3602(a),[6] and the district EDR Plan. The defendants argue that the Court lacks subject matter jurisdiction over Drone's claims

---

in the meeting, the parties agreed that Farashahi would instead issue a written decision and Drone's claim would proceed from there.

[4] In ruling on a motion to dismiss, courts may consider documents submitted by the movant if the documents are integral to the complaint and indisputably authentic. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006).

[5] The defendants have moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6). A motion under Rule 12(b)(1) tests the court's subject matter jurisdiction. The plaintiff bears the burden of proving proper subject matter jurisdiction as the party asserting jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

3

because the Civil Service Reform Act ("CSRA") governs this matter. They also state that sovereign immunity bars her claims against the defendants in their official capacities. Finally, the defendants move to dismiss because Drone fails to state a claim against the defendants in their individual capacities.

### *A. Subject Matter Jurisdiction*

#### 1. Civil Service Reform Act

The CSRA "established a comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988). The CSRA divides civil service employees into Senior Executive Service, competitive service, and excepted service employees. *Id.* at 441 n. 1. Senior Executive Service employees hold high-level executive branch positions. *Id.* The competitive service includes all other executive branch employees that a statute or regulation does not specifically exclude. *Id.* Excepted service employees do not fall within the other two categories. *Id.*

Congress deliberately excluded certain federal employees from the CSRA's provision of administrative and judicial review. *Fausto*, 484 U.S. at 555. Only "employees" may use these review procedures. *Elgin v. Dep't of Treas.*, 567 U.S. 1, 5 (2012). The term "employees" encompasses those in the competitive service and members of the excepted service who meet certain requirements. *Id.* Judicial branch employees fall within the excepted service category and cannot utilize the CSRA review procedures unless they qualify for preferential treatment or meet particular eligibility requirements not applicable in this case.[7] *Semper v. Gomez*, 747 F.3d

---

[6] Though unnecessary to decide this motion, the Court notes that this provision enables the appointing court to remove a probation officer for cause. 18 U.S.C. § 3602(a).

[7] For instance, certain veterans and close family qualify as "preference eligible." *Semper v. United States*, 694 F.3d 90, 92 n. 1 (Fed. Cir. 2012) (citing 5 U.S.C. § 2108). The CSRA may also cover certain excepted service personnel who served a probationary or trial period pending

4

229, 235–36 (3d Cir. 2014) ("Semper II"). Probation officers, as judicial employees, cannot use the CSRA review procedures. *Dotson v. Griesa*, 398 F.3d 156, 169–70 (2d. Cir. 2005).

Congress repeatedly expressed its clear intent to exclude judicial employees from the CSRA review procedures. In the CSRA, Congress specifically included certain excepted service employees, while excluding all others. *Fausto*, 484 U.S. at 448. After *Fausto*, Congress amended the CSRA to expand review rights for some excepted service executive branch employees, but did not do the same for judicial employees. *Dotson*, 398 at 170–71. Congress also enacted a statute in 1990 to close a statutory loophole because it had granted CSRA review rights to certain U.S. Courts Administrative Office employees. *Semper II*, 747 F.3d at 240. These actions indicate Congress considered the separation of powers and judicial independence concerns that arise in connection with judicial branch employment disputes. *Id.*

Congress did not provide CSRA review to judiciary employees in part because the judiciary has its own adequate employment dispute review procedure. *Semper II*, 747 F.3d at 243. The judiciary "has long provided its personnel with the opportunity to challenge adverse employment decisions and obtain various forms of relief, including reinstatement." *Id.* at 242. Thus, judicial employees can pursue meaningful relief for employment-related claims within the courts' own remedial schemes. *Id.* at 235. The EDVA adopted such a review scheme for resolving employment disputes. *See* Employment Dispute Resolution Plan (1999). The EDVA EDR Plan applies to all district and bankruptcy court employees, with some listed exceptions. *Id.* The review structure begins with an informal complaint process, then escalates to more formal procedures involving a hearing before a Court Unit Executive, appeal to the Chief Judge, and circuit judicial council review. *Id.*

---

conversion to the competitive service during the relevant period, and those who completed two years of continuous service in the same or similar positions in an executive agency. *Id.* at 92–93.

5

Like Dotson, Drone worked as a probation officer within the judicial branch, so she cannot utilize the CSRA's review procedures. *Dotson*, 398 F.3d at 163. Because Congress intentionally omitted judicial review of probation officers' employment disputes from this comprehensive legislation, the CSRA precludes district court review of Drone's employment dispute. *Semper II*, 747 F.3d at 235. Just as the Virgin Islands district court's remedial plan did in *Semper*, the EDVA EDR Plan provided Drone with "meaningful review by judicial officers," including an evidentiary hearing before Chief Judge Smith and an appeal to the Fourth Circuit Judicial Council.[8] *Id.* at 242.

For these reasons, this Court lacks subject matter jurisdiction over Drone's claims.

## 2. Sovereign Immunity

Drone has sued all defendants in their official capacities as federal judicial employees. Courts treat suits against government employees in their official capacities as suits against the government entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As sovereign, the United States enjoys immunity unless it consents to a suit. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "[T]he terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* Courts should "strictly construe[]" alleged waivers of sovereign immunity "in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

The United States has not waived its sovereign immunity with respect to Drone's claims against the defendants in their official capacities.[9] Because sovereign immunity bars these claims, the Court does not have subject matter jurisdiction to hear them.

---

[8] Drone's complaint also mentions a claim under the EDR Plan itself, but the Plan does not provide for an appeal to the district court. *See* Employment Dispute Resolution Plan.

[9] To the extent Drone attempts to plead *Bivens* claims, as discussed in Section B., *Bivens* did not waive the federal government's sovereign immunity because remedies against officials under *Bivens* are individual in nature. *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996).

6

## B. Failure to State a Claim

Drone also fails to state a claim against Benns and Guertler in their individual capacities. First, to the extent Drone asks these defendants to reinstate her or expunge the adverse action from her record, they cannot provide relief in their individual capacities. Officers sued in their personal capacities "come to court as individuals," whereas those sued in their official capacities "assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27 (1991). Because these defendants, as individuals, cannot reinstate Drone, she fails to state a claim in this regard.

Moreover, Drone cannot sue Benns and Guertler in their individual capacities for damages through a *Bivens* suit. *Bivens* permitted a plaintiff to recover money damages from a federal officer for violations of his Fourth Amendment rights. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). Since that decision, the Supreme Court has allowed only two other types of *Bivens* claims for damages.[10] *Dotson*, 398 F.3d at 166. Courts have proceeded cautiously in implying relief under *Bivens*, particularly if the court finds either of two factors: (1) an explicit Congressional declaration that persons injured by a violation may not recover money damages but must instead seek another equally effective remedy; or (2) special factors counseling hesitation in the absence of Congressional affirmative action. *Id.* (citing *Bivens*, 403 U.S. at 396–97).

Circuit courts have consistently held that the CSRA precludes federal employees from bringing *Bivens* actions for constitutional violations in the employment context. *Semper II*, 747

---

Furthermore, any purported waiver of sovereign immunity under the Administrative Procedures Act does not apply here, as the Act expressly excludes "the courts of the United States" from its definition of "agency." 5 U.S.C. § 701(b)(1)(B).

[10] The Supreme Court permitted a *Bivens* suit against a member of Congress for violations of Fifth Amendment due process, and against a federal official for cruel and unusual punishment contrary to the Eighth Amendment. *Dotson*, 398 F.3d at 166.

7

F.3d at 237 (collecting cases); *see also Dotson*, 398 F.3d at 166 (noting that Congress' enactment and amendment of the CSRA constitutes a "special factor" in the *Bivens* analysis). The CSRA precludes *Bivens* actions even where, as here, employees have no right to administrative or judicial review under the CSRA itself. *Semper II*, 747 F.3d at 237. "The CSRA represents Congress' comprehensive identification of the employment rights and remedies available to federal civil service personnel," and courts generally avoid supplementing such comprehensive statutory relief by implying a cause of action. *Dotson*, 398 F.3d at 160. This Court will not contradict these firmly established principles by extending a *Bivens* action here.

For these reasons, Drone fails to state a claim upon which relief can be granted against Benns and Guertler in their individual capacities.

## III. CONCLUSION

The Court lacks subject matter jurisdiction over Drone's claims because the CSRA precludes district court review of employment disputes that fall outside of the statute's reach. The EDVA EDR Plan provided Drone with meaningful judicial review of her claims. Furthermore, sovereign immunity bars Drone's claims against the defendants in their official capacities, and she fails to state a claim against the defendants in their individual capacities. For these reasons, the Court grants the defendants' motion to dismiss.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: December 14, 2017
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

8